## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOHN LUTHER BOONE,<br><br>      Plaintiff,<br><br>  v.<br><br>NOBLE MIDSTREAM PARTNERS, LP,<br>COLIN E. PARFITT, ROBIN FIELDER,<br>MARTIN SALINAS, JR., HALLIE A.<br>VANDERHIDER, ANDREW VIENS, ANDREI<br>F.B. BEHDJET, STEPHEN W. GREEN, and<br>ALANA KNOWLES,<br><br>      Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff John Luther Boone ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Noble Midstream Partners, LP ("Noble" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Noble, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between Chevron Corporation ("Chevron"), Cadmium Merger Sub LLC, a direct wholly owned subsidiary of Chevron ("Merger Sub"), Cadmium Holdings Inc., a direct wholly owned subsidiary of Chevron ("Holdings"), and Noble Midstream GP LLC, the sole general partner

of Noble ("General Partner") (the "Proposed Merger").

      2.     On March 4, 2021, Noble entered into an agreement and plan of merger with Chevron, Merger Sub, Holdings, and its General Partner (the "Merger Agreement"), whereby, through a series of transactions, Noble will become a wholly owned subsidiary of Chevron. The Conflicts Committee of the board of directors of the General Partner, consisting of Individual Defendants Martin Salinas, Jr., Andrew Viens and Hallie A.Vanderhider (the "Conflicts Committee"), approved the Merger Agreement, and recommended that the Board recommend approval of the Merger Agreement to Noble's common unitholders. Upon consummation of the Proposed Merger, Noble's common unitholders will receive 0.1393 of a share of common stock of Chevron in exchange for each Common Unit owned (the "Exchange Ratio").

      3.     On March 22, 2021, in order to convince Noble's Unitholders to vote in favor of the Proposed Merger, the Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

      4.     In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the financial projections for the Company; and (ii) the valuation analyses performed by the Company's financial advisor, Janney Montgomery Scott LLC ("Janney"); and (iii) Janney's relationship over the past two years with Chevron.

      5.     The Proposed Merger is expected to close in the second quarter of 2021, so the special meeting of Noble's common unitholders to vote on the Proposed Merger will be scheduled in the coming weeks (the "Unitholder Vote").  Therefore, it is imperative that the material information that has been omitted from the Registration Statement be disclosed prior to the Unitholder Vote, so Noble's common unitholders can properly exercise their corporate voting rights.

      6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger, unless and until the material information discussed below is disclosed to Noble's common unitholders sufficiently in advance of the upcoming Unitholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Noble's Common Units trade on the New York Stock Exchange ("NYSE"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Further, the Company's and the General Partner's legal

and financial advisors maintain their headquarters in this District.

## **PARTIES**

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Noble common units.

11.     Defendant Noble Midstream Partners, LP is a public company incorporated under the laws of Delaware with principal executive offices located at 1001 Noble Energy Way, Houston, Texas 77070.  Noble's Common Units are traded on the NYSE under the ticker symbol "NBLX".

12.     Individual Defendant Colin E. Parfitt is, and has been at all relevant times, is Chairman of the Board of the General Partner. Parfitt also serves as Vice President of Midstream of Chevron.

13.     Individual Defendant Robin Fielder is, and has been at all relevant times, President, Chief Executive Officer, and a director of the General Partner.

14.     Individual Defendant Martin Salinas, Jr. is, and has been at all relevant times, a director of the General Partner.

15.     Individual Defendant Hallie A. Vanderhider is, and has been at all relevant times, a director of the General Partner.

16.     Individual Defendant Andrew Viens is, and has been at all relevant times, a director of the General Partner.

17.     Individual Defendant Andrei F.B. Behdjet is, and has been at all relevant times, a director of the General Partner. Behdjet also serves as Vice President and General Counsel of Chevron's Downstream. Chemicals & Midstream business.

18.     Individual Defendant Stephen W. Green is, and has been at all relevant times, a director of the General Partner. Green also serves as President of Chevron North America Exploration and Production Company.

19.     Individual Defendant Alana Knowles is, and has been at all relevant times, a director

of the General Partner. Knowles also serves as Vice President of Finance, Downstream & Chemicals and Midstream of Chevron.

20.    The defendants identified in paragraphs 12 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Noble, the "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**A.    Background of the Company and the Proposed Merger**

21.    Noble Midstream is a master limited partnership originally formed by Noble Energy, Inc. and majority-owned by Chevron Corporation to own, operate, develop and acquire domestic midstream infrastructure assets. Noble Midstream currently provides crude oil, natural gas, and water-related midstream services and owns equity interests in oil pipelines in the DJ Basin in Colorado and the Delaware Basin in Texas. Noble Midstream strives to be the midstream provider and partner of choice for its safe operations, reliability, and strong relationships while enhancing value for all stakeholders.

22.    Chevron Corporation is one of the world's leading integrated energy companies. Through its subsidiaries that conduct business worldwide, the company is involved in virtually every facet of the energy industry. Chevron explores for, produces and transports crude oil and natural gas; refines, markets and distributes transportation fuels and lubricants; manufactures and sells petrochemicals and additives; generates power; and develops and deploys technologies that enhance business value in every aspect of the company's operations. Chevron is based in San Ramon, California.

23.    According to the March 5, 2021 joint press release announcing the Proposed Merger:

**CHEVRON ANNOUNCES AGREEMENT TO ACQUIRE NOBLE
MIDSTREAM PARTNERS**

SAN RAMON, Calif.--(BUSINESS WIRE)--Chevron Corporation (NYSE: CVX) ("Chevron") and Noble Midstream Partners, LP (NASDAQ: NBLX) ("Noble Midstream") announced today that they have entered into a definitive agreement for

Chevron to acquire all (33.925 million) of the publicly held common units representing the limited partner interests in Noble Midstream, not already owned by Chevron and its affiliates (the "Common Units"), in an all-stock transaction whereby each outstanding unitholder of Noble Midstream would receive 0.1393 of a share of common stock of Chevron in exchange for each Common Unit owned.

"We believe this buy-in transaction is the best solution for all stakeholders, enabling us to simplify the governance structure and capture value in support of our leading positions in the DJ and Permian basins," said Colin Parfitt, Vice President of Chevron Midstream and Chairman of the Board of Directors (the "Board") of the general partner of Noble Midstream Partners LP.

The Conflicts Committee of the Board, comprised entirely of independent directors, after consultation with its independent legal and financial advisors, unanimously approved the merger. Subsequently, the merger was approved by the Board.

The transaction is expected to close in the second quarter of 2021, subject to customary approvals. A subsidiary of Chevron, as the holder of a majority of the outstanding Common Units, has voted its units to approve the transaction.

### Advisors

Citi is acting as financial advisor and Latham & Watkins LLP is acting as legal advisor to Chevron. Janney Montgomery Scott is acting as financial advisor and Baker Botts L.L.P. is acting as legal advisor to the Conflicts Committee of the Board.

24.    As described below, the Registration Statement omits material information necessary for Unitholders to assess the fairness of the Proposed Transaction. It is imperative that Noble Unitholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for Unitholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

**B.    The Registration Statement Omits Material Information**

25.    On March 22, 2021, Defendants filed a materially incomplete and misleading Registration Statement with the SEC. The Unitholder Vote on the Proposed Merger is forthcoming. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's Unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement

misrepresents or omits material information that is necessary for the Company's Unitholders to make an informed voting decision in connection with the Proposed Merger, and thus the Registration Statement should be amended.

26.      *First*, the Registration Statement omits the projections for 2021 to 2025 Net Income for Noble (the "Net Income Projections"). Net Income is often considered one the most comparable metrics to those utilizing Generally Accepted Accounting Principles ("GAAP"), an accounting standard that ensures financial information is prepared on a reasonable basis. The inclusion of Net Income is therefore necessary for Noble's Unitholders to ensure that the Exchange Ratio is premised on projections that were reasonably prepared. The failure to disclose the Net Income Projections also obfuscates the financial picture of both companies and provides a misleadingly incomplete representation of the projections tables and valuation analyses summarized in the Registration Statement.

27.      As Regulation S-K of the SEC explains, when disclosing revenue (as was done here), it should be disclosed together with net income to prevent a misleading representation of corporate value:

> Although traditionally projections have been given for three financial items generally considered to be of primary importance to investors (revenues, net income (loss) and earnings (loss) per share), projection information need not necessarily be limited to these three items. However, management should take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items. Revenues, net income (loss) and earnings (loss) per share usually are presented together in order to avoid any misleading inferences that may arise when the individual items reflect contradictory trends.

17 C.F.R. § 229.10(b)(1); see also 17 C.F.R. § 244.100 (regarding disclosure of non-GAAP financial measures). Moreover, when a company chooses to disclose financial projections, it obligates itself to do so in a complete and accurate manner, and it may not cherry-pick certain metrics to disclose while withholding other readily available sets of projections from Unitholders. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019) ("The disclosure of [the company's] net

income/loss figures could have significantly altered the total mix by informing shareholders about pre-merger [the company]'s net income/loss."); *see also Smith v. Robbins & Myers*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) ("[I]f a Proxy discloses valuation information, it must be complete and accurate"). Accordingly, the Net Income Projections must be disclosed.

28.     ***Second***, the Company must disclose line-item projections underlying the calculation of Distributable Cash Flow projections on page 40 of the Registration Statement. In selectively disclosing certain metrics to Unitholders, the Board has chosen to blindfold Unitholders to fundamental valuation information—given to its financial advisor—and instead, left Unitholders out in the dark with only market data for guidance. In order to correct these material omissions, to the extent the data is readily available and up to the years created, Defendants must disclose: (i) Stock-based Compensation; (ii) Net Debt; and (iv) Dividends. Failure to do so will result in Unitholders not having all material information available, and should the merger be consummated, will cause Unitholders to lose the intrinsic value of their units.

29.     ***Third***, the Registration Statement describes Janney's fairness opinions and valuation analyses performed in support of their opinions yet omits important inputs and assumptions that Janney utilized in their calculations. Defendants concede the materiality of this information in citing Janney's fairness opinion and its valuation analyses among the reasons for recommending the merger to Noble Unitholders. Without this information, as described below, Noble's Unitholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in deciding whether to vote in favor of the Proposed Merger. The following omitted information, if disclosed, would significantly alter the total mix of information available to Noble's Unitholders.

30.     In summarizing Janney's *Premiums Paid Analysis*, the Registration Statement fails to disclose the premiums paid in the transactions.

31.     With respect to Janney's *Public Comparables Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

32.     With respect to Janney's *Precedent Transactions Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and metrics for the transactions observed in the analysis; (ii) the total values of the transactions; and (iii) the closing dates of the transactions.

33.     With respect to Janney's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values for the Company; (iii) the individual inputs and assumptions underlying the discount rates used in the analysis; (iv) the Company's net debt and the book value of preferred equity used in the analysis; and (v) Janney's basis for using multiples ranging from 7.5x to 9.0x.

34.     These key inputs are material to the Company's Unitholders, and their omission renders the summary of the Janney's financial analyses incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in financial analyses a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, FAIRNESS OPINIONS, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, the Company's Unitholders cannot evaluate for themselves the reliability of the Janney's financial analyses, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or were the result of an unreasonable judgment by Janney, and make an informed decision regarding whether to vote in favor of the Proposed Merger.

35.     ***Fourth***, the Registration Statement omits material information necessary for Janney's prior and/or ongoing relationship with the Chevron presently and during the past two years. These omissions fly in the face of the disclosure requirements of the Exchange Act and mislead shareholders as to the nature of Janney's relationship with the Chevron and the conflicts of interests that Janney faces. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

36.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Unitholder Vote concerning the Proposed Merger, Plaintiff will be unable to make an informed decision regarding whether to vote his units in favor of the Proposed Merger, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of

the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41.     Defendants have issued the Registration Statement with the intention of soliciting the Company's Public Unitholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company; and (ii) the valuation analyses performed by Janney in support of its fairness opinion.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the

Company's Unitholders although they could have done so without extraordinary effort.

43.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Registration Statement states that Janey reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Janney, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Janney's analyses in connection with their receipt of the fairness opinion, question the Janney as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the

Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

45.     Noble is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

46.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Unitholder Vote.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Noble within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Noble, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

51.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from

proceeding with the Unitholder Vote or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 5, 2021

**MONTEVERDE & ASSOCIATES PC**

By:   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*